# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

CASE NO.: 24-10014-B

---

CHASE GREGORY,

Appellant,

v.

TERRY DUKES, SR.,

Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

LT CASE NO.: 1:23-cv-45-AW-HTC

---

## APPELLANT'S PETITION FOR PANEL REHEARING AND REHEARING EN BANC

---

*/s/ Gwendolyn P. Adkins*



Gwendolyn P. Adkins (FBN: 0949566)
Scott J. Seagle (FBN: 57158)
gadkins@coppinsmonroe.com
sjseagle@coppinsmonroe.com
kflemming@coppinsmonroe.com
kwillis@coppinsmonroe.com
Coppins Monroe, P.A.
2316 Killearn Center Blvd., Suite 202
Tallahassee, FL 32309
Office: 850-422-2420   Fax: 850-422-2730

ATTORNEYS FOR DEFENDANT/APPELLANT
CHASE GREGORY

CASE NO.: 24-10014-B

CHASE GREGORY v. TERRY DUKES, SR.

## **CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to Eleventh Circuit Rule 26.1-1, Appellant files the following alphabetical list of the trial judge, attorneys, persons, firms, partnerships, and corporations with any known interest in the outcome of this appeal:

1. Adkins, Gwendolyn P. (Attorney for Appellant and Defendants below);

2. Cannon, The Honorable Hope T. (United States Magistrate Judge);

3. Coppins Monroe, P.A. (Attorneys for Appellant and Defendants below);

4. Dukes, Sr., Terry (Plaintiff/Appellee);

5. Gregory, Chase (Defendant/Appellant);

6. McCallum, Jr., Sheriff Robert B. (Defendant);

7. Seagle, Scott J. (Attorney for Appellant and Defendants below);

8. Slater, James M. (Attorney for Appellee)

9. Slater Legal PLLC (Attorneys for Appellee);

10. Winsor, The Honorable Allen (United States District Judge).

## <u>RULE 35-5(C) STATEMENT</u>

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States: *Hernandez v. Mesa*, 582 U.S. 548, 137 S. Ct. 2003 (2017), *White v. Pauly,* 580 U.S. 73, 137 S. Ct. 548, 196 L. Ed. 2d 463 (2017), and *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011); that the panel opinion conflicts with other panel decisions and precedents of this Circuit: *United States v. Ramirez-Chilel*, 289 F.3d 744, 752 (11th Cir. 2002); *Holmes v. Kucynda*, 321 F.3d 1069 (11th Cir. 2003); and *Fuqua v. Turner*, 996 F.3d at 1153 (11th Cir. 2021); and that consideration by the full court is necessary to secure and maintain consistency with the United States Supreme Court and with uniformity of decisions in this Court.


*/s/ Gwendolyn P. Adkins*
Gwendolyn P. Adkins
Scott J. Seagle
Attorneys of Record for
Defendant/Appellant
Chase Gregory

i

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ........................................................................................... C1

RULE 35-5(C) STATEMENT ............................................................................. i

TABLE OF CONTENTS ..................................................................................... ii

TABLE OF AUTHORITIES ............................................................................... iii

STATEMENT OF THE ISSUES ......................................................................... 1

STATEMENT OF THE COURSE OF PROCEEDINGS ........................................ 2

ARGUMENT ...................................................................................................... 3

    I.     En banc reconsideration is needed to conform to Supreme Court precedent requiring that only those facts known to the deputy at the time of the incident may be considered in the qualified immunity analysis ............................................................................... 4

    II.    En banc reconsideration is needed to resolve inconsistencies between panels that contravene the fundamental purpose of qualified immunity, which is to give the governmental actor fair notice that his actions are improper in the situation he faces. ............. 9

CONCLUSION ................................................................................................. 16

CERTIFICATE OF COMPLIANCE .................................................................. 16

CERTIFICATE OF TYPE SIZE AND STYLE .................................................... 16

CERTIFICATE OF SERVICE ........................................................................... 17

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. al-Kidd,*
    *563 U.S. 731 (2011)* ................................................................. i, 12

*City of Tahlequah v. Bond,*
    *595 U.S. 9, 142 S.Ct. 9, 11 (2021)* ....................................................1, 4

*District of Columbia v. Wesby,*
    *583 U.S. 48 (2018)* ...........................................................................1, 4

*Fuqua v. Turner,*
    *996 F.3d at 1153 (11th Cir. 2021)* ......................................... i, 11, 12

*Gill as Next Friend of K.C.R. v. Judd,*
    *941 F.3d 504 (11th Cir. 2019)* ............................................... 7, 11, 12

*Hernandez v. Mesa,*
    *582 U.S. 548, 137 S. Ct. 2003 (2017)* ...................................... i, 1, 3, 6

*Holmes v. Kucynda,*
    *321 F.3d 1069 (11th Cir. 2003)* ........................................... i, 10, 11, 12

*Jiles v. Lowery,*
    *2023 WL 2017354 (11th Cir. Feb. 15, 2023)* .......................................12

*Kisela v. Hughes,*
    *584 U.S. 100,138 S. Ct. 1148, 1152 (2018)* ..........................................7

*Malley v. Briggs,*
    *475 U.S. 335, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986)* .......................4

*Saucier v. Katz,*
    *533 U.S. 194, 121 S. Ct. 2151, 2156-57 (2001)* ...................................4

*Schneckloth v. Bustamonte,*
    *412 U.S. 218 (1973)* .........................................................................7

*United States v. Ramirez-Chilel,*
    *289 F.3d 744 (11th Cir. 2002)* ................................................. passim

## <u>STATEMENT OF THE ISSUES</u>

1.     Whether the panel's consideration of facts unknown to Deputy Gregory at the time of the incident [Panel Op., pp.2-3, *in passim*] contradicts the Supreme Court's repeated holding that the "qualified immunity analysis [ ] is limited to the facts that were knowable to the defendant officers at the time they engaged in the conduct in question. Facts an officer learns after the incident ends [ ] are not relevant." *Hernandez v. Mesa*, 582 U.S. 548, 554, 137 S. Ct. 2003, 2007 (2017) (internal quotations omitted) (citing *White v. Pauly*, 580 U. S. 73, 77, 137 S. Ct. 548, 196 L. Ed. 2d 463, 466 (2017) (*per curiam*)).

2.     Whether, in denying qualified immunity to Deputy Gregory, the panel's reliance on two panel decisions of the Circuit which are inconsistent with other panel decisions [Panel Op., pp.10-13], contradicts the Supreme Court's repeated holdings that "[t]o be clearly established, a legal principle must be [ ] dictated by controlling authority or a robust consensus of cases of persuasive authority," *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotations omitted); and that "[i]t is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (internal quotations and citations omitted).

1

## STATEMENT OF THE COURSE OF PROCEEDINGS[1]

On Saturday, May 25, 2019, without a warrant or exigency but for the purpose of making a felony arrest of Terry Dukes Jr. based on probable cause, Levy County Sheriff's Deputy Chase Gregory entered the home of Dukes Jr. and his father Terry Dukes Sr. after fellow officers knocked and announced their presence and Dukes Sr. promptly acknowledged their announcement by unlocking and opening the door to the home, and silently retreating back inside. [Doc.26-7, pp.7-9, 17, 21-24, 41]. Deputies did not have their service weapons drawn, and there was no show of force to coerce entry into the home. [Doc.26-3, pp.45; 56-58, 60-63, 65, 68; Doc.26-5, p.13; Doc.26-6, p.27; Doc.26-11, ¶3]. Under the totality of the circumstances, Deputy Gregory reasonably interpreted the overt physical actions of Dukes as nonverbal consent to enter the home, and he did so. [Doc.26-3, pp.65, 69-70, 88-89; Doc.26-11, ¶5].

After entry, it was determined that deputies had seized Dukes' Senior, not his son, for whom probable cause existed, and Dukes was released. [Doc.26-3, p.91] Dukes filed suit against Deputy Gregory and others. [Doc.1]

Gregory moved for summary judgment based on qualified immunity, which the District Court denied. A panel of this Court reversed in part but "[c]onstruing all facts in favor of Dukes," the panel concluded that Deputy "Gregory's entry violated

---

[1] The facts as stated herein are not admissions or stipulations for trial.

Dukes's clearly established Fourth Amendment rights." [Panel Op., p.2]. In doing so, the panel relied upon facts which were unknown to Gregory, incorrectly adjudged the qualified immunity defense from the Plaintiff's perspective, and relied on two prior panel decisions without regard to four other panel decisions in similar cases which, considered together, demonstrate the law was not clearly established.

This published opinion, which creates additional precedent, conflicts with multiple decisions of the United States Supreme Court concerning qualified immunity and conflicts with other panel decisions of this Court.

## **ARGUMENT**

This Court should grant the instant petition and reconsider the panel's assessment of whether Deputy Gregory's entry violated clearly established law for two reasons. First, the panel opinion consistently refers to facts that were unknown – and unknowable – to Deputy Gregory and other law enforcement on scene at the time of events. This is in direct contradiction to the Supreme Court's directive that the "qualified immunity analysis [ ] is limited to the facts that were knowable to the defendant officers at the time they engaged in the conduct in question. Facts an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant." *Hernandez v. Mesa*, 582 U.S. 548, 554, 137 S. Ct. 2003, 2007 (2017) (internal quotations omitted) (citing *Pauly*, 580 U. S. at 77). Second, the panel's pronouncement that two earlier panel decisions clearly

3

established the law for qualified immunity purposes contravenes the Supreme Court's consistent pronouncement that "[t]o be clearly established, a legal principle must be [ ] dictated by controlling authority or a robust consensus of cases of persuasive authority," *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (emphasis added); and that "[i]t is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *City of Tahlequah v. Bond*, 595 U.S. 9, 12, 142 S. Ct. 9, 11 (2021) (internal quotations and citations omitted).

**I.    En banc reconsideration is needed to conform to Supreme Court precedent requiring that only those facts known to the deputy at the time of the incident may be considered in the qualified immunity analysis.**

"If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz*, 533 U.S. 194, 202, 121 S. Ct. 2151, 2156-57 (2001) (citing *Malley v. Briggs*, 475 U.S. 335, 341, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986)).

> The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Katz*, [533 U. S. at 202]. The qualified immunity analysis thus is limited to "the facts that were knowable to the defendant officers" at the time they engaged in the conduct in question. [*Pauly*, 580 U.S. at 77]. Facts an officer learns after the incident ends—whether those facts would support granting immunity or denying it—are not relevant.

*Mesa*, 582 U.S. at 554.

This fundamental principle of the qualified immunity analysis is oft repeated by the Supreme Court. Yet this panel opinion is replete with reference to facts that the record confirms were unknown and unknowable to Deputy Gregory.

For example, in various places within the opinion, the panel summarizes the facts and includes multiple ones which could only have been known to Dukes, or which the record confirms were not known to Gregory or anyone else. Such facts relevant to the entry are stricken here:

> home and twice at the front door. ~~Thinking it was Junior,~~ Dukes then stated, *"I'm coming,"* opened the back door—where no officer had knocked—and turned and walked back toward the interior of the home, leaving the door open. ~~Dukes could not see Officer Gregory because of the way he was positioned at the back of the home,~~ and they did not speak.

[Panel Op., p.3].

> announced, "Sheriff's Office," but ~~Dukes, who was hard of hearing, did not hear that announcement and did not know that the police officers were outside in the dark. Dukes thought instead that his son had returned home, and thus~~ Dukes opened the back door. ~~Dukes did not see Officer Gregory outside, and~~ they did not speak.

[Panel Op., p.9].

> the home. In fact, ~~Dukes testified that when he opened the back door, he did not even know any police officers were outside~~.

[Panel Op., p.12]. The panel then utilizes the subjective perceptions and thoughts of Dukes which were not and could not be known to Gregory, as a basis for likening

the facts and circumstances to other decisions and ultimately concluding that Gregory is not entitled to qualified immunity based on these facts. Such analysis is in clear contravention of the mandates of the United States Supreme Court noted above, which specify that the analysis is limited to the facts knowable to the officers at the time.

The panel is correct that the Court must construe the facts in the light most favorable to the nonmoving party for purposes of summary judgment, but that does not mean that it is permitted to impute facts or knowledge to Gregory that he did not – and could not – have. Gregory did not know the person was Dukes Senior, he could not know what Dukes Senior (or anyone else) was thinking, or what he saw or could see, or whether he had difficulty hearing. Ascribing such knowledge to Deputy Gregory and denying him qualified immunity because of such purported knowledge is specifically proscribed by the Supreme Court. *Hernandez,* 582 U.S. at 554. Indeed, an official would most certainly never receive the protections of qualified immunity if such were allowed.

Dukes did not merely open a door at random. Rather, in response to deputies announcing their identity/presence, Dukes unlocked and opened the door *and then immediately retreated back inside while leaving the door open behind him*. There was no show of force or coercion. To Gregory, and in common human experience,

these actions reasonably suggested that Dukes was aware deputies were knocking at his door and that his opening and leaving the door was an invitation to follow.

Utilizing those facts unknowable to Gregory, the panel opinion improperly characterizes the relevant factual issue before it as whether Dukes gave Gregory consent to enter.

> Here, there are both issues of evidentiary sufficiency and of law. First, we must decide whether the evidence was sufficient for a reasonable jury to find that Dukes did not give consent for Officer Gregory to enter—this is a factual issue that the district court determined is in genuine dispute. *See Gill ex rel. K.C.R. v. Judd*, 941 F.3d

This is incorrect because the relevant factual issue is not Dukes' subjective intent, which can never be known. The properly framed issue is whether, under the totality of the circumstances known to the deputies prior to entry, which would include Dukes' actions, omissions, and statements, no reasonable officer could conclude that entry into the home under those circumstances was constitutionally unreasonable. Phrased alternatively, if under the totality a reasonable law enforcement officer could conclude – as did Gregory – that consent to enter had been given and entry was lawful, Gregory is entitled to qualified immunity.

The panel repeatedly incorrectly defines the crucial fact issue, for qualified immunity purposes, as being Dukes' subjective mental state instead of the facts known to Gregory at the time:

> Qualified immunity does not protect Officer Gregory against this claim at summary judgment because (1) a jury could conclude that Officer Gregory entered Dukes's home without Dukes's consent, in violation of his Fourth Amendment rights, and (2) when he entered, it was clearly established that his conduct violated Dukes's Fourth Amendment rights.

> We begin with the evidentiary sufficiency question—whether a jury could find that Officer Gregory entered Dukes's home without his consent, in violation of his Fourth Amendment rights.

[Panel Op., p.7].

> jury to find an absence of consent. That question—whether Dukes consented to Officer Gregory's entry—turns on the "totality of all the circumstances." *Judd*, 941 F.3d at 522 (citation modified). We

[Panel Op., p.8].

> Viewed in the light most favorable to Dukes, we conclude that a reasonable jury could find that Dukes never consented, either explicitly or implicitly, to Officer Gregory entering his home.

> through the open back door. This evidence is sufficient for a jury to find that Dukes did not convey to the officers outside his house that they had permission to enter.

[Panel Op., p.9].

> Because a jury could conclude that Officer Gregory entered Dukes's home without his consent—and without a warrant or exigency, either—a jury could conclude that the officer entered Dukes's home in violation of his Fourth Amendment rights. *See*

[Panel Op., p.10].

8

The Court repeatedly mis-frames the factual issue, in the context of Gregory's qualified immunity defense, as whether Dukes actually *intended* to give consent to enter, which is diametrically opposed to long-standing Supreme Court precedent that requires an evaluation of a qualified immunity defense to be based upon the facts known to the officer at the time, viewed through the lens of an objective officer in his position. This opinion confuses the relevant facts and perspective through which qualified immunity decisions must be analyzed.

## II. En banc reconsideration is needed to resolve inconsistencies between panels that contravene the fundamental purpose of qualified immunity, which is to give the governmental actor fair notice that his actions are improper in the situation he faces.

Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.

Although this Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.

*Kisela v. Hughes*, 584 U.S. 100, 104, 138 S. Ct. 1148, 1152 (2018) (internal citations and quotations omitted).

There is no United States Supreme Court decision, no decision from this Court, or from the Florida Supreme Court which would have put Deputy Gregory on notice that in the circumstances confronting him in May 2019 (law-enforcement

presence had been made known, an affirmative verbal response had been received, and it was followed by the physical actions of opening a door and returning inside), valid consent to enter the home did not exist.

The panel opinion recognizes consent as an exception to the warrant requirement, that consent must be voluntary and not coerced, and that it must be based on a totality of the circumstances. [Panel Op., p.8 citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)]. But overlaying this analysis in qualified immunity cases is the requirement that consent be viewed from the perspective of the reasonable officer, not from the subjective intentions of the homeowner.

The panel opinion next distinguishes another panel's decision in *Judd* on facts that the law enforcement "officer and resident communicated verbally and nonverbally, suggesting a request for entry and a granting of that request." [Panel Op., p.9]. In contrast, the panel states, Gregory and Dukes "never communicated" before Gregory entered. It reached this conclusion despite acknowledging that another deputy had knocked (and the record demonstrates that Dukes responded both verbally and nonverbally), differentiating that Dukes did not open a door on which a deputy had knocked, nor did Dukes communicate with anyone standing near the door that he opened.

If this is the rule – consent only exists if an individual opens a door knocked on <u>and</u> there must be verbal communication with a law enforcement at that door –

10

then this is the first time this Court has made such a decision, and a law enforcement officer in the field in 2019 could not possibly have been on fair notice of it.

Nevertheless, in finding the law clearly established, the panel opinion here first cites to another panel's 2007 decision in *McClish v. Nugent*, 483 F.3d 1231, 1247 (11th Cir. 2007) (Hon. Anderson, Marcus, and Altonaga) observing that a resident's mere opening a door in response to a knock does not give permission to enter. [Panel Op.,10 citing *McClish*]. Gregory does not rely on the opening of the door alone.[2]

Parsed further, the panel opinion finds that two cases pre-dating Deputy Gregory's actions clearly established the law. In the first case, this panel notes that a 1996 panel decision in *Gonzalez* (Hon. Kravitch, Edmondson, and Eisele) concluded that law enforcement's following a resident as they entered a home was not consent to enter. [Panel Op., p.11]. The second case cited is the panel decision in *Bashir* (Hon. Black, Hull, and Farris), which found an entry unlawful where the officer never requested or received permission to enter the residence. In *Bashir,* law enforcement communicated with a resident in his yard. The resident picked up his child and entered his home without speaking further to the officer, and that panel determined consent did not exist because there was no request for permission and no

---

[2] *McClish* is inapplicable. There, one plaintiff refused to step outside, and the other was pulled outside. The officers did not attempt to enter. Entry beyond the doorway was not an issue.

express invitation. [Panel Op., p.11, citing 1328-29]. The panel concludes the instant "case is on all fours with *Gonzalez* and *Bashir* in every way that matters.' [Panel Op., p.11]. But it's not.

The case at bar does not include an *express* request to enter by law enforcement followed by a stated verbal consent or an *explicit* invitation to enter, but that does not mean that there was no request or invitation. Other panel decisions of this Court, which are never mentioned by the panel in this case, have advised law enforcement officers that no express request or invitation is required and that consent may be inferred from one who "yields the right-of-way."

*Ramirez-Chilel,* decided in April 2002 (Hon. Birch, Wilson, and Dowd), is instructive. In that case, police officers approached a residence and knocked, announcing themselves. In response to their *request for entry,* the owner "yielded the right-of-way" to allow them in. *Ramirez-Chilel*, 289 F.3d at 747. Finding that the owner's physical actions constituted consent, this Court's panel held that there was no Fourth Amendment violation because while the owner did not give the officers "explicit verbal consent ... to enter, the officers did receive some sort of implied consent to enter from Ramirez-Chilel's body language." *Id*. at 752 ("we ... find that Ramirez-Chilel demonstrated his consent to entry by 'yielding the right-of-way' for the officers to enter."). Of particular note, the panel found the officers' entry to be legal because there was no official show of force, which would have "forced" the

defendant to let the officers in. Verbatim, the panel observed: "Although the officers did not receive any explicit verbal consent [ ] to enter, the officers did receive some sort of implied consent to enter from Ramirez-Chilel's body language that was not present in *Gonzalez*." *Id.* at 752.

Less than a year later, a different panel of this Court (Hon. Anderson, Birch, and Barkett) again held that such an overt physical act was sufficient for officers to reasonably infer that consent had been given. *Holmes v. Kucynda*, 321 F.3d 1069, 1079 (11th Cir. 2003) ("the officers' entry into [the] apartment [in these circumstances] did not violate Holmes' constitutional rights."). In *Holmes,* police responding to a domestic disturbance knocked on the suspect's apartment door. When a man answered, the officers asked if they could enter the apartment. Although the man "did not respond verbally, *he opened the door and took a step backward, indicating acquiescence*." There was no evidence to suggest that the entry was coerced, and the entry was found to be lawful. *Holmes,* 321 F.3d 1069 at 1079.

The facts presented to Deputy Gregory in May 2019 were similar. Dukes was inside his home, deputies knocked and announced their identity/presence, Dukes promptly acknowledged someone's presence as he unlocked and opened the door, and then immediately retreated back inside while leaving the door open behind him in a gesture of *acquiescence* (*Holmes*) and of implied consent to enter from his actions and body language (*Ramirez-Chilel*). There was no show of force or coercion.

13

In 2019, sixteen years after *Holmes* and a mere five months after the events involving Dukes and Gregory, a third panel of this Court (Hon. Carnes, Martin, and Anderson) confirmed that consent *may be implied* from the resident's conduct. *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 525 (11th Cir. 2019). The *Judd* panel opined that it was "not convinced that this distinction [– an explicit request to enter versus an announcement –] makes a difference." The panel in this case rejected *Judd* as inapposite.

Two years after Gregory's entry into Dukes' home, another panel of this Court in *Fuqua v. Turner*, 996 F.3d 1140, 1153 (11th Cir. 2021) (Hon. Pryor, W., Grant, and Tjoflat) stated, "We know that the mere failure to object to an officer's entry into the home does not constitute valid consent to the entry, but that some affirmative indication, *even if non-verbal*, that the officers are welcome to enter may be enough." (Emphasis added). Even if the inspector gained entry by a claim of "right" rather than a request for admission, it was not the sort of egregious conduct giving rise to a clear Fourth Amendment violation.

If different panels within this Court can vary so widely in their view of what constitutes valid consent (*Cf. Gonzalez* - 1996, *Bashir* – 2006, *Dukes* – 2025: suggesting consent should be express and verbal; with *Ramirez-Chilel* – 2002, *Holmes* – 2003, *Judd* – 2019, *Fuqua* – 2021: finding consent can be implied by body

language and conduct),[3] it cannot possibly be clearly established law – under any definition thereof – such that Deputy Gregory in the field in May 2019 would have known that the specific circumstances with which he was confronted were insufficient to believe consent to enter had been given.

For a right to be clearly established, "the contours of [the] right [must be] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up). The continuing conflict between the panel decisions demonstrates the law in this Circuit was and is not clearly established, leaving officials guessing at the lawfulness of their actions, and, most importantly for this case, establishes that Deputy Gregory is entitled to qualified immunity because the law was not clearly established such that a reasonable officer in his shoes would be on notice that it would have been unconstitutional to follow Dukes into his home.

---

[3] No discussion is included of various unpublished panel decisions of this Court which complicate the guidance for law enforcement despite their non-binding status. *See, e.g., Jiles v. Lowery*, 2023 WL 2017354, at *3 (11th Cir. Feb. 15, 2023) (Hon. Pryor, W., Jordan, Branch - unpublished) (citing *Ramirez-Chilel*, 289 F.3d at 752 (Relevant here, "consent can be implied [by affirmative physical conduct], such as where a defendant has yielded the right- of-way in response to an officer's request for admission to the home.")

## CONCLUSION

For the reasons stated herein, this Court should grant the Petition for Rehearing.

## CERTIFICATE OF COMPLIANCE

This Petition complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) and 11th Cir. L.R. 35-1, because it contains fewer than 3,900 words, excluding the parts exempted by Fed. R. App. P. 32(f) and 11th Cir. L.R. 35-1, as counted by the word-processing system used to prepare it.

## CERTIFICATE OF TYPE SIZE AND STYLE

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to 11th Cir. R. 25-3, on this 5th day of November 2025 this document is being filed electronically and service shall be through the Court's transmission facilities on all persons appearing before this Court. Additionally, as required by 11th Cir. R. 40-1, FRAP 25(a)(2)(A)(ii), and FRAP 25(c)(1)(C), four paper copies are being furnished to the Court via Federal Express on the 6th day of November 2025.

*/s/ Gwendolyn P. Adkins*



Gwendolyn P. Adkins
(FBN: 0949566)
gadkins@coppinsmonroe.com
jclark@coppinsmonroe.com
kwillis@coppinsmonroe.com
Coppins Monroe, P.A.
2316 Killearn Center Blvd., Suite 202
Tallahassee, FL 32309
Office: 850-422-2420   Fax: 850-422-2730
ATTORNEYS FOR DEFENDANT/APPELLANT
CHASE GREGORY

17